Filed 6/20/22  P. v. Smith CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN ANDREW SMITH,<br><br>    Defendant and Appellant. | F080233<br><br>(Super. Ct. No. F17903429)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III, Judge.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Brian Andrew Smith was convicted by jury of murder after he shot and killed a man.  On appeal, he claims instructional errors undermine the conviction.  We affirm.

# BACKGROUND

**Charges**

The Fresno County District Attorney charged Smith with one crime: murder. (Pen. Code,[1] § 187.) The charge included allegations Smith used a firearm in committing murder. (§§ 12022.53, subd. (d), 12022.5, subd. (a).)

**Evidence**

A woman testified Smith came to her residence while "intoxicated." She later heard an argument outside her home followed by a gunshot. When she looked outside, she saw Smith and then his vehicle "speeding away …."

Several hours later, a man's body was found in a vineyard. The coroner determined a single gunshot wound to the head killed the man. The wound suggested the gun was fired while in contact with the skin. The manner of death was homicide; suicide was "nearly impossible."

An investigation led to Smith. He was detained and interviewed. He initially denied any involvement in the victim's death. He revised his statement and explained he actually was with the victim but the victim committed suicide.

At trial, Smith testified he accidentally killed the victim. He explained he went to his friend's house and was "smoking … weed" and "drinking beer" when the victim arrived. While Smith, the victim, and Smith's friend were all outside, the friend started playing with Smith's gun.

Later, when Smith wanted to leave, he tried to take the gun from his friend but the friend "just kept playing around with it." Smith eventually grabbed the gun but it fired, killing the nearby victim. He denied alcohol caused the gun to discharge.

---

[1] Undesignated statutory references are to the Penal Code.

Smith was "scared" and did not know how to respond. He placed the victim's body "in the back seat of [his] car" and "took off." He was intoxicated and drove around until he ended up at a vineyard. He ultimately left the victim's body in the vineyard.

**Verdict and Sentence**

Smith was convicted of second degree murder. The firearm allegations were found true. He was sentenced to serve 40 years to life in prison.

## DISCUSSION

Smith raises two instructional errors to challenge his conviction. One, did the court err by not instructing the jury with CALCRIM No. 625 which explains how voluntary intoxication interacts with the mental states relative to murder? Two, did the court err by not instructing the jury Smith's friend was an accomplice to the crime, necessitating a need to corroborate his testimony? (See CALCRIM No. 334; § 1111.) We find no errors and affirm the judgment.

**I. Voluntary Intoxication**

CALCRIM No 625 is entitled "Voluntary Intoxication: Effects on Homicide Crimes (Pen. Code, § 29.4)." It explains voluntary intoxication is relevant "in deciding whether the defendant acted with an intent to kill …." Smith asserts "[t]he trial court erred when it failed to instruct the jury about voluntary intoxication and its potential to negate intent to kill …."[2] Alternatively, he blames counsel for "not requesting the instructions when it is without dispute that Smith was intoxicated at the time of the offense."

The People counter "the trial court had no sua sponte duty to provide any such instruction." They also claim any error was harmless and Smith's counsel was not ineffective. We find no error.

---

[2] Smith extends this argument to CALCRIM No. 763. CALCRIM No. 763 applies to death penalty cases. It has no application in this case.

3.

"Evidence of voluntary intoxication is generally admissible on the issue of whether a defendant formed the specific intent required for the crime charged." (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 541–542.) " '[A] defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's "actual formation of specific intent." ' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 295 (*Verdugo*).)

" '[T]o establish a claim of ineffective assistance of counsel, [Smith] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.)

At the outset, we reject the suggestion the trial court erred in not instructing the jury with CALCRIM No. 625. "It is well settled that '[a]n instruction on the significance of voluntary intoxication is a 'pinpoint' instruction that the trial court is not required to give unless requested by the defendant.' "[3] (*Verdugo, supra,* 50 Cal.4th at p. 295.)

---

[3] Smith urges to reconsider this precedent. We decline the invitation.

4.

As to whether Smith's counsel failed in requesting CALCRIM No. 625, we similarly reject the contention. There was no evidence intoxication affected Smith's actual intent. (*Verdugo, supra,* 50 Cal.4th at p. 295.)

Perhaps more importantly, Smith specifically disclaimed intoxication was relevant to shooting the victim. Instead, he testified the shooting was accidental. Intoxication was inconsistent with and irrelevant to Smith's testimony describing the shooting. For these reasons, counsel could reasonably conclude an involuntary intoxication defense was ill-advised.[4] Smith has failed to demonstrate otherwise and the ineffective assistance claim fails.[5]

## II. Accomplice Corroboration

CALCRIM No. 334 explains to jurors they must first decide whether a person is an accomplice to a crime. If the jury concludes the person is an accomplice, it cannot find the defendant guilty based on the accomplice's statements or testimony alone.

---

[4] Smith also claims voluntary intoxication was relevant to explain to the jury why his pretrial statements and actual testimony were inconsistent. As we understand the argument, he means his memory is vague because he was intoxicated when he killed the victim, resulting in different descriptions on different dates, i.e., the pretrial interview and the trial testimony. Again, there was no request for a pinpoint instruction on voluntary intoxication.

To the extent Smith would anchor this argument to ineffective assistance, we would reject it. Both Smith and his counsel, respectively through testimony and argument, addressed the inconsistent statements. Combined, they explained Smith was "scared" during an interrogation by skillful investigators, resulting in a statement skewed from the truth. Accordingly, this strategy rendered intoxication irrelevant. A reasonable strategic choice is not ineffective assistance. (See *People v. Olivas* (2016) 248 Cal.App.4th, 758, 771 ["Though defendant argues on appeal that his trial counsel was ineffective for failing to request a voluntary intoxication instruction, such a request would have been inconsistent with the primary defense theory …."].)

[5] The People maintain the claim is forfeited. In general, they are correct. But we choose to address the merits due to the ineffective assistance argument.

Rather, the accomplice's statements or testimony suffice as evidence only if corroborated. (CALCRIM No. 334.)

Smith asserts "[t]he trial court had a *sua sponte* duty to instruct on the principles governing the law of accomplices, including the need for corroboration, because the evidence at trial suggested [Smith's friend] could be an accomplice." The People argue the "claim lacks merit …." We agree with the People.

Section 1111 provides in part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."[6] "[T]he corroboration must connect the defendant to the crime *independent* of the accomplice's testimony." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 36 (*Romero and Self*).) It need not, however, "corroborate every fact to which the accomplice testifies [citation], and ' " may be circumstantial or slight and entitled to little consideration when standing alone …." ' " (*Id.* at p. 32.)

The section 1111 corroboration requirement applies to any witness "who is liable to prosecution for the identical offense charged against the defendant on trial …." (§ 1111.) " 'To be chargeable with an identical offense, a witness must be considered a principal under section 31.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1155.) "In other words, there must be evidence of that person's 'guilt … based on a combination of the direct perpetrator's acts and the aider and abettor's own acts and own mental state.' " (*Ibid.*) "[T]he trial court" must "instruct on 'the principles regarding accomplice testimony' " "when there is 'substantial evidence that a witness who has implicated the defendant was an accomplice ….' " (*Ibid.*)

---

[6] Testimony within the meaning of section 1111 includes out-of-court statements made to law enforcement investigators. (*People v. Hoyt* (2020) 8 Cal.5th 892, 946.)

We conclude the claim lacks merit because any error is necessarily harmless. Put simply, even if Smith's friend were an accomplice,[7] the friend's statements and testimony were corroborated by Smith's own admissions to involvement in the shooting.

Section 1111 does not demand perfectly corroborating every incriminating word uttered by an accomplice. It demands independent but slight connection to the crime. (*Romero and Self, supra,* 62 Cal.4th at pp. 32 & 36.) There is no question Smith was connected to the crime because he readily admitted he killed the victim. No reasonable jury would have failed to find corroboration had the court instructed it with CALCRIM No. 334. (*People v. Anderson* (2018) 5 Cal.5th 372, 411 [" 'Error of the kind [alleged] is harmless if the record contains "sufficient corroborating evidence." ' "].) The instructional error claim fails.

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:

POOCHIGIAN, ACTING P. J.

FRANSON, J.

---

[7] Frankly, we have no reason to believe Smith's friend was an accomplice. The argument is based entirely on speculation.